IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

PERRY BONIN, et al.,

               Plaintiffs,

vs.

SABINE RIVER AUTHORITY OF TEXAS,
et al.,

               Defendants.

NO. 1:17-CV-00134-TH (Lead Case)
NO. 1:18-CV-00153-TH (Member Case)

## REPORT AND RECOMMENDATION GRANTING
## THE ENTERGY DEFENDANTS' MOTION TO DISMISS

This case is assigned to the Honorable Thad Heartfield, United States District Judge, and is referred to the undersigned United States Magistrate Judge for pretrial management. Doc. No. 42. Pending before the court is the "Motion to Dismiss Plaintiffs' Fifth Amended [Complaint] Pursuant to Rule 12(b)(6)" filed by Defendants Entergy Texas, Inc., Entergy Louisiana, LLC, and Cleco Power, LLC (Entergy Defendants). Doc. No. 62. The Plaintiffs filed a response (Doc. No. 65), the Entergy Defendants filed a reply (Doc. No. 67), and the Plaintiffs filed a sur-reply. Doc. No. 70. On August 28, 2018, the court entered a *sua sponte* order directing the Plaintiffs to file a more definite statement to supplement the operative complaint. Doc. No. 79. On September 11, 2018, Plaintiffs filed the supplement, which the court designated as "Plaintiffs' Response to Court's Order for More Definite Statement." Doc. No. 80. On October 2, 2018, the Entergy Defendants filed a "Supplement to Motion to Dismiss and Response to Plaintiffs' More Definite Statement." Doc. No. 82. Because the Plaintiffs' negligence, trespass, and private nuisance claims against the Entergy Defendants fail to state any claim upon which relief can be granted, the claims should be dismissed with prejudice.

# I.  Factual Background

According to the operative complaint, the Plaintiffs are owners of property in Texas and/or Louisiana who allege that Defendants Sabine River Authority of Texas (SRA-T) and Sabine River Authority of Louisiana (SRA-LA) unlawfully "[took], damaged, or destroyed" their property during a flood event in March of 2016.  Doc. No. 59, at ¶¶ 10, 17; Doc. No. 80, at ¶¶ 10, 18.  The Plaintiffs allege SRA-T and SRA-LA caused "a deliberate release of water from the Toledo Bend spillway gates into the Sabine River" which caused or contributed to flood damage on the Plaintiffs' properties.  *Id.* at ¶ 2.  SRA-T and SRA-LA opened "nine spillway gates" over a one-day period "in response to the fact that the water level had surpassed 172.5 feet; however, the opening of the spillway gates was merely the 'last straw' in a series of deliberate actions which Defendants had taken in the days, months and years prior to the flooding."  *Id.* at ¶ 3.  The deliberate actions "were within the discretion of SRA-T and SRA-LA to act in compliance with the [] license" from the Federal Energy Regulatory Commission (FERC) under the Federal Power Act (FPA).  *Id.* at ¶ 4.  The Plaintiffs allege that homes, businesses, churches, and other properties along the Sabine River were flooded, "burial vaults were disinterred and scattered, and animals and livestock were killed, in the name of and by the authority of the SRA-T and SRA-LA."  Doc. No. 59, at ¶ 9; Doc. No. 80, at ¶ 10.   The Plaintiffs' claims against SRA-T and SRA-LA include only Texas and Louisiana state constitutional takings claims.

## A.  Claims Against the Entergy Defendants

The Plaintiffs allege that SRA-T and SRA-LA, under a Power Sales Agreement (PSA), granted the Entergy Defendants the "right to oversee the generation of power and to purchase the generated power."  Doc. No. 59, at ¶ 21; Doc. No. 80, at ¶ 22.  Under the PSA, the Entergy Defendants are "responsible for operating and maintaining the two hydroelectric generators

located at the Toledo Bend Dam."  Doc. No. 59, at ¶ 20; Doc. No. 80, at ¶ 21.  The Entergy Defendants allowed one of the hydroelectric generators ("Unit #2") to remain out of service from approximately August of 2015 until the flood event in March of 2016.  *Id.*  Despite "numerous requests by the SRA," the Entergy Defendants "failed to make the necessary repairs" to Unit #2.  *Id.*  "Because [Unit #2] was out of service for months, substantial amounts of water which otherwise would have emptied out of the upstream body of water remained there, raising the overall water level and contributing to the eventual overfill situation."  *Id.*  Under the terms of the PSA, the [Entergy Defendants] "agreed to follow those terms and conditions of the license applicable to [the] generation of power."  Doc. No. 59, at ¶ 21; Doc. No. 80, at ¶ 22.  Plaintiffs allege that the Entergy Defendants "had a legal duty to operate [Unit #2] in compliance with the license," and despite SRA-T and SRA-LA warning the Entergy Defendants that they were not in compliance with the license, the Entergy Defendants breached their duty by "knowingly and willfully refus[ing] to operate" Unit #2 when it should have been operated.  *Id.*

Resulting from their failure to repair/operate Unit #2 in accordance with the License, the Plaintiffs allege three state law claims under both Texas and Louisiana law against the Entergy Defendants: negligence, trespass and private nuisance. Doc. No. 59, at ¶¶ 20–23; Doc. No. 80, at ¶ 26.  The Plaintiffs make no other explicit claims against the Entergy Defendants.

## II.  Procedural History

The Plaintiffs originally filed this case in the 163rd Judicial District Court of Orange County, Texas, on April 20, 2016.  The Defendants removed the case to this court on May 26, 2016, arguing the court had federal question jurisdiction.  *See* Case No. 1:16-CV-171, Doc. No. 1. At the time, the Plaintiffs alleged only takings claims under the Texas and Louisiana Constitutions against SRA-T and SRA-LA.  *See generally* 1:16-CV-171, Doc. No. 2.  After removal, the

Plaintiffs filed a motion to remand, arguing the court did not have federal subject matter jurisdiction.  1:16-CV-171, Doc. No. 7.  Judge Clark granted the motion to remand because the Plaintiffs' state constitutional takings claims were not created by federal law and did not turn on any substantial federal questions.  *See generally* 1:16-CV-171, Doc. No. 26.

After remand, the Plaintiffs amended their petition in state court to add state law claims of negligence, trespass, private nuisance, and violation of the Texas Water Code against the Entergy Defendants.  *See* Instant Case, Doc. No. 14.  Based on the new claims, SRA-T removed the case to this court again based on federal question jurisdiction.  Doc. No. 1.  The Plaintiffs filed another motion to remand, arguing SRA-LA failed to consent to removal, and the court lacked federal subject matter jurisdiction.  Doc. No. 18.  Both of the Plaintiffs' arguments were rejected, and the motion to remand was denied.  Doc. No. 55 (report and recommendation); Doc. No. 57 (order adopting) (Heartfield, J.).  Applying *Simmons v. Sabine River Auth. of La.*, 732 F.3d 469 (5th Cir. 2013), *cert denied* 134 S. Ct. 1876 (2014), the court determined federal subject matter jurisdiction existed for the Plaintiffs' negligence claim against the Entergy Defendants because that claim—as it was articulated in the Fourth Amended Petition—turned on a substantial question of federal law. *See* Doc. No. 55, at 14–15 ("[E]stablishing a duty for the Plaintiffs' state law negligence claim against the Entergy Defendants necessarily raises a federal issue of the duty imposed on the Defendants by FERC.").  In denying the motion to remand, the court exercised federal question jurisdiction over the negligence claim and supplemental jurisdiction over the Plaintiffs' other claims under 28 U.S.C. § 1367(a).  *See* Doc. No. 55, at 15–16.

The Entergy Defendants also filed a motion to dismiss under Federal Rules of Civil Procedure 12(c) or 12(b)(6) in the alternative.  Doc. No. 38.  The motion was granted in part and denied in part.  Doc. No. 54 (report and recommendation); Doc. No. 58 (order adopting)

(Heartfield, J.).  Applying *Simmons* again, the court held that the Plaintiffs' negligence claim was preempted by the FPA because the articulation of the claim in the Fourth Amended Petition implied that the Entergy Defendants acted *in compliance* with FERC guidelines instead of specifically alleging that they *failed to conform* to FERC guidelines.  Doc. No. 54, at 5–7. However, the Plaintiffs were given leave to amend their complaint.  Doc. No. 56, at 3.

On March 14, 2018, the Plaintiffs filed their "Fifth Amended Complaint."  *See generally* Doc. No. 59.  The Entergy Defendants filed the pending motion to dismiss.  *See* Doc. No. 62.  On August 28, 2018, the court entered a *sua sponte* order directing the Plaintiffs to file a more definite statement under Rule 12(e) to supplement the operative complaint.  Doc. No. 79, at 2–3.  The court observed that in order to avoid preemption under Fifth Circuit precedent, the negligence claim must allege that the Entergy Defendants failed to conform to the FERC license.  *Id.*  On September 11, 2018, Plaintiffs filed the supplement, which the court designated as "Plaintiffs' Response to Court's Order for More Definite Statement."[1]   Doc. No. 80. On October 2, 2018, the Entergy Defendants filed a "Supplement to Motion to Dismiss and Response to Plaintiffs' More Definite Statement."  Doc. No. 82.

### III.  Subject Matter Jurisdiction

The parties have not argued that this court now lacks subject matter jurisdiction, and the parties have not significantly addressed subject matter jurisdiction since the filing of the operative complaint.  The Plaintiffs' negligence claim in the operative complaint alleges that the Entergy Defendants violated a duty they owed based on FERC's guidelines/license under the FPA.  Doc.

---

[1] Following the court's "Order for More Definite Statement" (Doc. No. 79), Plaintiffs filed their "Sixth Amended Complaint."  Doc. No. 80.  The parties met with the undersigned and requested that the briefing for the motions to dismiss under the prior complaint apply to the newly amended complaint.  Accordingly, the undersigned directed the Clerk to rename the "Sixth Amended Complaint" as "Plaintiffs' Response to Court's Order for More Definite Statement."  *See* Doc. No. 81.  Thus, both the "Fifth Amended Complaint" (Doc. No. 59) and "Plaintiffs' Response to Court's Order for More Definite Statement" (Doc. No. 80) will be considered as the operative complaint.

No. 59, at ¶ 21; Doc. No. 80, at ¶¶ 21–22.  Accordingly, this court has federal subject matter jurisdiction over the Plaintiffs' negligence claim based on a jurisdictional provision within the FPA:

> The District Courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of this chapter or any rule, regulation, or order thereunder . . . .  Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder may be brought in any such district or in the district wherein the defendant is an inhabitant, and process in such cases may be served wherever the defendant may be found.

16 U.S.C. § 825p.  The court exercises supplemental jurisdiction over all of the other claims in the case pursuant to 28 U.S.C. § 1367.

## IV.  Legal Standard

### A.  12(b)(6) Motions

FED. R. CIV. P. 12(b)(6) authorizes dismissal of a complaint that fails to state a claim for which relief can be granted.  A court should grant a Rule 12(b)(6) motion only when the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Similarly, a plaintiff must offer more than "unadorned, the defendant-unlawfully-harmed-me accusation[s]."  *Id.*  When considering a motion to dismiss, all facts alleged in the complaint must be accepted as true, those facts must be construed in a light most favorable to the non-movant, and all reasonable inferences

must be drawn in favor of the non-movant.  *Morgan v. Swanson*, 659 F.3d 359, 396 (5th Cir. 2011)

(citing *Brown v. Nationsbank Corp.*, 188 F.3d 579, 585–86 (5th Cir. 1999)).

### B.  Matters Outside the Pleadings

The Entergy Defendants urge the court to take judicial notice of documents created by

FERC that allegedly conclude that the non-operation of Unit #2 was not a violation of the FERC

license.  Doc. No. 62, at 9–10, 14.   Though the Plaintiffs first characterized such documents as

"hearsay and full of inadmissible factual conclusions" (Doc. No. 65, at 2), the Plaintiffs concede

that "a court may take judicial notice of FERC letters and other documents."  Doc. No. 70, at 1.

However, the Plaintiffs contend the court may not extend judicial notice "to the veracity of the

documents themselves."  Doc. No. 70, at 1.  The Plaintiffs argue that a court can take judicial

notice of the FERC report "without resolving whether its contents are true."  Doc. No. 70, at 1

(citing *U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 755 n.9 (S.D. Tex. 2010)).

The Plaintiffs further argue that reliance on FERC documents outside of the original pleadings

requires the court to convert the instant motion to a motion for summary judgment, entitling the

Plaintiffs to an opportunity to conduct discovery before a ruling can be entered.  Doc. No. 70, at

2–3.

When deciding a motion to dismiss for failure to state a claim, courts may consider, in

addition to the pleadings, "matters of which they may take judicial notice."  *Lovelace v. Software

Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996) (referencing FED. R. EVID. 201(f)).   In

*Lovelace*, the Fifth Circuit held that courts could take judicial notice of required public disclosure

documents filed with the Securities and Exchange Commission, but these documents "should be

considered only for the purpose of determining what statements the documents contain, not to

prove the truth of the documents' contents."  *Lovelace*, 78 F.3d at 1018.  Courts may admit

"matters of public record directly relevant to the issue at hand" under judicial notice when deciding a motion to dismiss for failure to state a claim, without converting the motion to one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *see also Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

Here, similar to the *Lovelace* court taking judicial notice of required public SEC filings, the court may take judicial notice that the FERC documents exist as public records.  The court takes notice of the FERC documents as public records, though the veracity of the FERC documents is not established.  Because the court may take judicial notice of the FERC documents as public records, the motion to dismiss does not need to be converted to a motion for summary judgment. *See Funk*, 631 F.3d at 783.

Though the court takes judicial notice of the *existence* of the FERC documents, this does not mean the documents contain any truth.  The FERC documents could potentially become competent summary judgment evidence, but the Entergy Defendants have not cited any case showing that the court *must* take judicial notice of the *truth* of any portion of the FERC documents for the purposes of a motion to dismiss.  As stated above, all the facts alleged in the complaint must be accepted as true when considering a motion to dismiss, those facts must be construed in a light most favorable to the non-movant, and all reasonable inferences must be drawn in favor of the non-movant.  *Morgan*, 659 F.3d at 396.  However, as a practical matter, the analysis below does not rely on any FERC documents.  Thus, taking judicial notice of the FERC documents' existence has no effect on the disposition of the pending motion to dismiss.

## V.  Analysis

### A.  Alleged Violations of the FERC License

The Plaintiffs' negligence claim against the Entergy Defendants should be dismissed because the Plaintiffs did not adequately allege any violations of the FERC license, despite having several opportunities to amend.  Plaintiffs assert that the "license violations we address deal with the required minimum flow through generator Units 1 and Unit 2 and the power generation requirements under the license."  *See* Doc. No. 65, at 12.    Initially, the Entergy Defendants responded that Plaintiffs "never actually identified—either in their Complaint or in their response-—any license provisions establishing 'power generation requirements' or requirements for 'minimum flow' through Units 1 and 2, or explained the substance of these purported requirements, or how [the Entergy Defendants] violated them."  Doc. No. 67, at 2.  Thereafter, the court ordered Plaintiffs to file a more definite statement under Federal Rule of Civil Procedure 12(e).  *See* Doc. No. 79.  Plaintiffs complied and amended their Fifth Amended Complaint to include three new paragraphs.  *See* Doc. No. 80, at ¶¶ 5, 23, 26.  Within these added paragraphs, Plaintiffs cite to these alleged license violations.  *See* Doc. No. 80.  Specifically, Plaintiffs argue that the Entergy Defendants failed to generate 65,700,000 kilowatt-hours of electricity during "peaking operations," thereby violating the terms of the license.  Doc. No. 80, at ¶ 5.  Plaintiffs further argue that the Entergy Defendants are responsible for this violation because pursuant to the PSA (*see* Doc. No. 80-8, Ex. H), they are required to "operate and maintain the Generating Station on behalf of the Authorities."  Doc. No. 80, at ¶ 23; *see also* Doc. No. 80-8, at 32 (§ 4.01).  Consequentially, Plaintiffs allege that "[t]he License requires the authorities to operate and maintain the generation station" (Doc. No. 59, at ¶ 21; Doc. No. 80, at ¶ 22) and by failing to repair generator Unit 2, the Entergy Defendants breached the license and their legal duty.

However, an examination of the PSA and the cited provisions of the license alleging this generation requirement illustrates that it is meritless.  Plaintiffs rely on a footnote in the license to assert the alleged generation requirement.  *See* Doc. No. 62-3, at 8 (¶ 30) n. 15 ("The delayed implementation of the seasonal spillway release flows is to *accommodate the Authorities' obligations under its current power sales agreement that requires the Authorities to provide a minimum of 65,700,000 kilowatt-hours of prime power during the peaking period*.") (emphasis added).  This language acknowledges an obligation owed to the Entergy Defendants by the Authorities (SRA-T and SRA-LA) pursuant to a separate contract, the PSA.  It does not transform the generation requirement under the PSA into a requirement under the FERC license.

Under the terms of the PSA, the Entergy Defendants are "subject to" the terms and conditions of the FERC license.  *See Simmons*, 732 F.3d at 472.  In fact, the PSA specifically states that "this Agreement is made *subject to* the terms and provisions of said proceedings and license." Doc. No. 80-8, at 42 (§ 8.10) (emphasis added); *see Bradshaw v. Lower Colorado River Auth.*, 573 S.W.2d 880, 883 (Tex. Civ. App.—Beaumont 1978, no writ) ("The term 'subject to' is a term of qualification, meaning 'subordinate to,' 'subservient to,' or 'limited by.'").  Thus, to discharge their obligations under the PSA to "operate and maintain the Generating Station," the Entergy Defendants must act in accordance with the FERC license requirements relating to project operations.

 Moreover, the footnote in the license discussing the generation requirement is found under the heading "Proposed Project Facilities, Operation, and Environmental Measures" with the subheading for "Aquatic Settlement Agreement."   Doc. No. 62-3, at 6–7.  This further indicates that this power generation provision is not a FERC license requirement, rather it is simply a contractual obligation owed to the Entergy Defendants by SRA-T and SRA-LA independent from

the FERC license.[2]  *Cf.* Summary of License Requirements, Doc. No. 62-3, at 9–10 (¶¶ 35–44) *with* Doc. No. 62-3, at 6–7.

The PSA also states that "nothing in this Agreement shall constitute an agreement for the benefit of third parties."  Doc. No. 80-8, at 39 (§ 6.04).  Thus, the PSA's subordinate nature to the FERC license coupled with the inability for a party other than the Entergy Defendants and/or the Authorities to sue on an alleged breach of the PSA shows that the power generation requirement under the PSA is not a requirement under the FERC license.  Accordingly, the Entergy Defendants could not have breached a legal duty under the FERC license if there was not a violation of a provision in the license.  As a result, the Plaintiffs have failed to a state claim upon which relief may be granted because the FERC license does not contain a generation requirement of 65,700,000 kilowatt-hours.  Additionally, Plaintiffs did not cite to any other portions of the license that were allegedly violated.  Therefore, the Plaintiffs' negligence claim should be dismissed.

## B.  No Liability for Floodwaters

Alternatively, the Plaintiffs' negligence claim should be dismissed because the Entergy Defendants did not proximately cause any damage by waters that they have a legal duty to control.  The operative complaint alleges a "deliberate release of water from the Toledo Bend spillway gates into the Sabine River" ultimately caused the Plaintiffs' injuries through downstream flooding.  Doc. No. 59, at ¶ 2; Doc. No. 80, at ¶ 2.  In connection with the Entergy Defendants' conduct, the operative complaint specifically uses the term "floodwaters" (Doc. No. 59, at ¶ 22; Doc. No. 80,

---

[2] Further, both the Entergy Defendants and SRA-T argue that the PSA does not require that a particular amount of electricity be generated.  Instead, the PSA states that the Authorities will provide "sufficient flow" for the generation of 65,700,000 kilowatt hours during the peaking period, subject to the availability of water.  *See* Power Sales Agreement, Doc. No. 80-8, at 336 (§ 5.05); *see also* Entergy Defendants' Supplement, Doc. No. 82, at 6 n. 3; SRA-T's Supplement, Doc. No. 83, at 5 n.2.

at ¶ 24), while the term "surface waters" is not found within the complaint.  The difference between "floodwaters" and "surface waters" is important under Texas law.

The Entergy Defendants argue that the Plaintiffs' claim must be dismissed because private entities, like the Entergy Defendants, cannot be held liable for damages caused by "floodwaters"—only state entities have a duty to control such waters.   Doc. No. 62, at 21–22.  The Plaintiffs cite to three cases from Texas Courts of Appeal for this proposition.  *See Lewis v. Texas Utils. Elec. Co.*, 825 S.W.2d 722, 724 (Tex. App.—Dallas 1992, pet. denied) ("Flood waters are exclusively the domain of the state.  Ownership of flood waters, and the duty to control such waters, is vested in the State and its political subdivisions."); *Raburn v. KJI Bluechip Invs.*, 50 S.W.3d 699, 704 (Tex. App.—Fort Worth 2001, no pet.) ("The State also has the ownership and the non-delegable duty to control flood waters and to maintain the appurtenant instrumentalities used for flood control.") (citing TEX. CONST. art. XVI, § 59 and *Lewis*, 825 S.W.2d at 725); *Texas Woman's Univ. v. The Methodist Hosp.*, 221 S.W.3d 267, 278 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that a private defendant might owe a duty to control *surface waters* for the purposes of a negligence claim, but implying no duty would be owed for *floodwater* damage).

The Plaintiffs' response (Doc. No. 65) does not dispute the Entergy Defendants' legal arguments concerning Texas law on floodwater liability, nor does it seek to distinguish the cases cited by the Entergy Defendants.   Instead, the Plaintiffs attempt to argue that the operative complaint somehow alleges an "impounding of *surface water*" behind Unit #2.[3]  Doc. No. 65, at 12 (emphasis added).  This argument is easily rejected because it is without any textual support: the operative complaint never states nor implies that surface waters caused the Plaintiffs' property damages, only that such damages were caused by "floodwaters."  Doc. No. 59, at ¶ 22; Doc. No.

---

[3] Despite the opportunity to amend their claim, Plaintiffs continue to allege floodwaters in their supplement. *See* Doc. No. 80, at ¶ 24.

80, at ¶ 24.  The Plaintiffs also argue that "[t]he fact the impounded surface water may also have satisfied the definition of 'flood water' after its release[] does not entitle the [Entergy Defendants] to dismissal of Plaintiffs' claim."  Doc. No. 65, at 12.  This argument is also rejected because it is in conflict with Texas law—surface water ceases to be "surface water" when it joins a natural watercourse (like the Sabine River):

> The phrase "surface water" is undefined in the Water Code, but it is a term of art when used in the context of riparian rights.  It means water which is diffused over the ground from falling rains or melting snows, and [it] continues to be such until it reaches some bed or channel in which water is accustomed to flow.  *Surface water loses its identity when it becomes a part of a natural watercourse such as a stream or a river*, and does not revert to being surface water by virtue of a temporary overflow.  Surface water is never found in a natural watercourse having (1) a bank and bed, (2) a current of water, and (3) a permanent source of supply.

*Salazar v. Sanders*, 440 S.W.3d 863, 873 (Tex. App.—El Paso 2013) (quotations omitted) (citations omitted) (emphasis added); *see also Dietrich v. Goodman*, 123 S.W.3d 413, 419 (Tex. App.—Houston [14th Dist.] 2003) (A plaintiff "has no cause of action stemming from the diversion of water contained in a natural watercourse.  Thus, a landowner might divert the entire Brazos River across his neighbor's property without subjecting himself to liability under Section 11.086 of the Water Code.") (citation omitted).  "Floodwaters" are waters that have "overflowed a natural water course but remain a continuous part of that original part of the water course," and "[w]aters entering or following a defined course or channel are not considered diffuse surface water.  This includes water in a ditch, a pond, pipes, or a river."  *Michaelski v. Wright*, 444 S.W.3d 83, 93 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (internal citations omitted).  Once the spillway gates released water from the upstream body into the Sabine River, any former "surface water" from the upstream body lost its identity as surface water and became a part of the Sabine River.

The Plaintiffs also argue that the court cannot determine whether the waters at issue in this case are surface waters or floodwaters because it is a "typically a question of fact and not amenable to disposition as a matter of law." Doc. No. 65, at 13. If the Plaintiffs had alleged any damage caused by surface waters, then perhaps they would be correct, and this court might hold off making such a determination at this juncture. However, the Plaintiffs have not made *any* allegations in the operative complaint that surface waters caused any harm to the Plaintiffs. *See Raburn*, 50 S.W.3d at 704 ("Next, the plaintiffs contend that the true issue is whether the waters they encountered were surface waters or flood waters, and that this was a question of fact, not a question of law for the trial court to decide. We disagree . . .  From the evidence before it, the trial court could have found that the water in question was flood water as a matter of law."). The Plaintiffs did not include any facts in the operative complaint to even remotely suggest that the waters which damaged their properties were surface waters. Instead, all of the facts alleged—and all possible inferences therefrom—are consistent with damages only caused by floodwaters. Accordingly, it is appropriate to determine as a matter of law that the Plaintiffs have alleged only damages by floodwaters in the operative complaint.

In summary, the Plaintiffs alleged that the waters that caused their damages were released from the upstream body through the spillway gates into the Sabine River. Doc. No. 59, at ¶ 2; Doc. No. 80, at ¶ 2. As a matter of law, the water was no longer "surface water" as soon as the spillway gates released the water into the Sabine River. The water became floodwaters when it overflowed the natural watercourse of the Sabine River. Accordingly, based on the Plaintiffs' own articulation of the events in the operative complaint, the Plaintiffs have not alleged that they were harmed by "surface waters"—they only alleged that they were harmed by "floodwaters." Based on the Texas law cited by the Entergy Defendants (which was not disputed nor distinguished by

the Plaintiffs), the Entergy Defendants owed no duty to control such floodwaters, they cannot breach a duty they do not owe, and they cannot proximately cause damages if they have no duty to control the waters in the first place. Stated another way, the operative complaint fails to allege sufficient facts to state a negligence claim for which relief can be granted because it includes only allegations that the Plaintiffs were harmed by floodwaters, not surface waters.

### C. Negligence Claim Fails

Even if the analysis above concerning floodwaters and surface waters is incorrect, the Plaintiffs' negligence claim also fails to allege sufficient facts to support a negligence action by the Plaintiffs' own articulation of the claim. The Entergy Defendants argue that the Plaintiffs have failed to allege sufficient facts to state a plausible negligence claim. Doc. No. 62, at 22–26. Plaintiffs alleged violations under the state law of both Texas and Louisiana. Doc. No. 80, at ¶ 26. However, for the negligence claim, it does not matter whether the claim is under Texas or Louisiana negligence law because the result would be the same.

Louisiana negligence law includes all of the same elements as Texas law, though it is articulated in five elements instead of three: "[A] plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Bufkin v. Felipe's Louisiana, LLC*, 2014-0288 (La. 10/15/14); 171 So. 3d 851, 855. The fourth element, "legal cause," is encapsulated within the proximate cause analysis under Texas law, especially the "foreseeability" sub-component. *See Perkins v. Entergy Corp.*, 98-2081 (La. App. 1 Cir. 12/28/99); 756 So. 2d 388, 410 ("[L]egal cause can be evaluated on the basis of foreseeability and

ease of association."). For simplicity, the court will use the elements and terminology of Texas negligence law in the ensuing analysis.

In Texas, "[t]he common law doctrine of negligence consists of three elements: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The third element, proximate cause, has two sub-components: cause-in-fact (also known as *but for* causation) and foreseeability. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005) (citing *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992)).

For the purposes of this section of analysis only, it will be assumed that the Plaintiffs have alleged sufficient facts to overcome a motion to dismiss for the first two elements. First, the Plaintiffs allege that the Entergy Defendants owed a legal duty under the FERC license to operate Unit #2 in compliance with the license. Doc. No. 59, at ¶ 21; Doc. No. 80, at ¶ 22. Second, the Plaintiffs have alleged that the duty was breached when the Entergy Defendants failed to comply with the FERC license by "knowingly and willfully refus[ing] to operate" Unit #2 when it should have been operational. Doc. No. 59, at ¶ 21; Doc. No. 80, at ¶ 22. Assuming, *arguendo*, that the Plaintiffs have sufficiently alleged the first two elements, they have failed to allege sufficient facts for the proximate cause element.

### 1. Proximate Cause: Cause-in-Fact

The test for cause-in-fact is "whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." *Id.* (citing *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 727 (Tex. 2003)). Cause-in-fact is not established where the defendant's negligence does "no more than furnish a condition which makes the injuries possible," nor when

the defendant's conduct is too attenuated to be a substantial factor in the resulting harm. *Allways Auto Grp., Ltd. v. Walters*, 530 S.W.3d 147, 799 (Tex. 2017) (citations omitted).

The Plaintiffs have alleged that Unit #2's non-operation in the months leading up to the flood event caused "substantial amounts of water which otherwise would have emptied out of the upstream body of water [to remain] there, raising the overall water level and contributing to the eventual overfill situation." Doc. No. 59, at ¶ 20; Doc. No. 80, at ¶ 21.  In a Rule 12(b)(6) motion, the court must accept this factual allegation as true.  The Plaintiffs have not alleged any other facts to directly support the proximate cause element of their negligence claim.  The facts alleged are insufficient to support a plausible cause-in-fact.

The Plaintiffs have essentially alleged that the Entergy Defendants' failure to fix Unit #2 furnished a *condition* (i.e. the condition of too much water in the upstream body) that made the Plaintiffs' injuries possible, but "furnish[ing] a condition" is insufficient to establish cause-in-fact. *See IHS Cedars*, 143 S.W.3d at 799.  The operative complaint does not allege any facts that the water remaining in the upstream body actually resulted in any flooding of the Plaintiffs' properties that would not have occurred otherwise.  The Plaintiffs have not alleged how an operational Unit #2 would have changed the amount of water released from the spillway gates prior to the flooding of the Plaintiffs' properties.  The bare-bones factual allegations made by the Plaintiffs are not enough to state a plausible cause-in-fact for the Plaintiffs' negligence claim.  Because of the Plaintiffs' failure to allege facts showing the cause-in-fact of their injuries by the Entergy Defendants' actions, the negligence claim should be dismissed for failure to state a claim for which relief can be granted.

## 2.  Proximate Cause: Foreseeability

The Plaintiffs' negligence claim also fails because the Plaintiffs have not pleaded sufficient facts for foreseeability.  To prove foreseeability, the Plaintiffs must establish that "a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citation omitted). The Plaintiffs have not alleged any facts that directly address the Entergy Defendants' ability to foresee the danger created by leaving Unit #2 in disrepair.  The Plaintiffs have alleged that SRA-T and SRA-LA made numerous requests for the Entergy Defendants to fix Unit #2 in the months before the flood event.  Doc. No. 59, at ¶ 20; Doc. No. 80, at ¶ 21.  Even assuming that fact as true and drawing all reasonable inferences in the Plaintiffs' favor, this fact alone does not establish foreseeability.  The operative complaint does not make any connections between SRA-T and SRA-LA's request that Unit #2 be repaired to avoid any foreseeable flood danger.  The operative complaint does not allege that the Entergy Defendants knew (or should have known) that a non-operational Unit #2 might cause excess water to remain in the upstream body of water, nor how excess water might create any kind of danger.  The operative complaint does not address how a person of ordinary intelligence would anticipate that Unit #2 being non-operational would create or exacerbate property damage downstream in the event of an extreme rainfall event that causes flooding of the Sabine River.  Because the Plaintiffs have not alleged enough facts to plausibly establish the foreseeability aspect of proximate cause, the negligence claim under both Texas and Louisiana law should be dismissed for failure to state a claim for which relief can be granted.

## D.  Trespass Claim Fails

The Entergy Defendants argue that the Plaintiffs' trespass claim fails to allege sufficient facts for all of the trespass elements.  Doc. No. 62, at 26–27.  Plaintiffs' allege the trespass claim

against the Entergy Defendants under both Texas and Louisiana state law.  Doc. No. 80, at ¶ 26.

Any differences between Texas trespass law and Louisiana civil trespass law are negligible as

applied to the facts of the instant case.

Under Louisiana law, "a civil trespass is defined as the unlawful physical invasion of the

property or possession of another."  *Chauvin v. Shell Oil Co.*, 16-609 (La. App. 5 Cir. 10/25/17);

231 So. 3d 903, 907, writ denied, 2017-1985 (La. 1/29/18); 233 So. 3d 607; *see also* "[C]ivil

trespass is generally considered to be an intentional tort, requiring proof that the defendant took

some intentional action that resulted in harm to the plaintiff."  *Hogg v. Chevron USA, Inc.*, 2009-

2632 (La. 7/6/10); 45 So. 3d 991, 1002 n.11.  Insofar as negligent conduct may satisfy Louisiana

civil trespass law—*see Terre Aux Boeufs Land Co., Inc. v. J.R. Gray Barge*, 2000-2754 (La. App.

4 Cir. 11/14/01); 803 So. 2d 86, 95, writ denied, 2001-3292 (La. 3/8/02), 811 So. 2d 887—the

Plaintiffs have failed to allege sufficient facts for their negligence claim in the instant case, as

discussed above.

Under Texas law, a trespass to real property is the "unauthorized entry upon the land of

another" by entering—*or causing something to enter*—another's property.  *N. Shore Energy,*

*L.L.C. v. Harkins*, 501 S.W.3d 598, 605 (Tex. 2016) (citations omitted).  To recover on a trespass

claim, a plaintiff must prove the following elements:

> (1) the plaintiff owned or had a lawful right to possess real property;
> (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary; and
> (3) the defendant's trespass caused injury to the plaintiff's right of possession.

*Salazar v. Sanders*, 440 S.W.3d 863, 876 (Tex. App.—El Paso 2013, pet. denied).  The only

relevant intent is that of the actor to enter the property—the actor's subjective intent or awareness

of the property's ownership is irrelevant.  *Id.*

For the first element, the Plaintiffs have alleged sufficient facts that they own (or have a lawful right to possess) the real properties damaged by the floodwaters.  *See* Doc. No. 59, at ¶¶ 10, 22; Doc. No. 80, at ¶¶ 11, 24.  The Plaintiffs have also alleged sufficient facts to satisfy the third element because the flooding of their properties "denied [the plaintiffs] the use and enjoyment of their propert[ies]."  Doc. No. 59, at ¶ 22; Doc. No. 80, at ¶ 24.  However, the Plaintiffs have failed to allege sufficient facts for the second element.

The second element requires the Plaintiffs prove "the defendant[s] entered the plaintiff[s]' land and the entry was *physical*, *intentional*, and *voluntary*."  *Salazar*, 440 S.W.3d at 876 (emphasis added).  As discussed previously in the context of cause-in-fact for negligence, the Plaintiffs have merely alleged that the Entergy Defendants caused excess water to remain in the upstream body—the Plaintiffs have not alleged that the Entergy Defendants actually caused any water to enter the Plaintiffs' properties.  Doc. No. 59, at ¶ 20; Doc. No. 80, at ¶ 21.  For this reason alone, the Plaintiffs fail to establish the second element, though the Plaintiffs fail to allege sufficient facts for two other aspects of the second element as well.

Although the Plaintiffs sufficiently allege that the floodwaters were an unauthorized *physical* entry onto their properties, the Plaintiffs failed to allege facts showing that the Entergy Defendants *intentionally* and *voluntarily* caused any floodwater to enter the Plaintiffs' properties. The Plaintiffs allege that the Entergy Defendants left Unit #2 in a state of disrepair, and this allowed excess water to remain in the upstream body.  Doc. No. 59, at ¶ 20; Doc. No. 80, at ¶ 21. The Plaintiffs have not included any facts to show how the Entergy Defendants caused any water from the upstream body to end up on the Plaintiffs' properties.  On the contrary, the Plaintiffs alleged that SRA-T and SRA-LA opened the spillway gates deliberately—there is no mention of the Entergy Defendants' participation in this act.  Doc. No. 59, at ¶ 3; Doc. No. 80, at ¶ 3.  The

facts as alleged do not support the Entergy Defendants causing an intentional or voluntary entry of floodwaters onto the Plaintiffs' properties, and the Plaintiffs do not allege any other facts to support these elements.  Because the Plaintiffs failed to allege sufficient facts to support the second element of their trespass claim, the trespass claim should be dismissed for failure to state a claim for which relief can be granted.

### E.  Private Nuisance Claim Fails

The Plaintiffs allege that the Entergy Defendants committed a "private nuisance" under both Texas and Louisiana state law.  Doc. No. 59, at ¶ 23; Doc. No. 80, at ¶¶ 25, 26.  However, the operative complaint refers to it as a "private nuisance" claim, which is the proper terminology under Texas state law.   Under Louisiana state law, similar claims are referred to as "obligations/laws of vicinage."  *See Rizzo v. Nichols*, 2003-1394 (La. App. 3 Cir. 3/3/04); 867 So. 2d 73, 77; *Barrett v. T.L. James & Co.*, 28,170 (La. App. 2 Cir. 4/3/96); 671 So. 2d 1186, 1190, writ denied, 96-1124 (La. 6/7/96); 674 So. 2d 973; *Badke v. USA Speedway, LLC*, 49,060 (La. App. 2 Cir. 5/14/14); 139 So. 3d 1117, 1125, writ denied, 2014-1533 (La. 10/24/14); 151 So. 3d 606.  Thus, the analysis will proceed with the assumption that the Plaintiffs have alleged a private nuisance claim under Texas law, and an obligations/laws of vicinage claim under Louisiana law.

Under Texas law, a private nuisance is a "condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance." *Mathis v. Barnes*, 316 S.W.3d 795, 801 (Tex. App.—Tyler 2010), *rev'd in part on other grounds*, 353 S.W.3d 760 (Tex. 2011).  To recover on a private nuisance claim, a plaintiff must prove the following elements:

(1) the plaintiff had a private interest in land;
(2) a condition substantially interfered with the plaintiff's interest in the use and enjoyment of land, causing the plaintiff unreasonable discomfort or annoyance;
(3) the defendant created or maintained the condition (i) intentionally, (ii) negligently, or (iii) by other abnormally dangerous conduct;
(4) the condition caused injury to the plaintiff; and
(5) the plaintiff suffered damages.

Michol O'Connor, *O'Connor's Texas Causes of Action* 779 (2018) (citing multiple cases, including *Mathis*, 316 S.W.3d at 801); *see also Crosstex N. Texas Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016) (broad discussion of the elements).  The Plaintiffs allege that the Entergy Defendants' *negligent conduct* satisfies the elements of private nuisance.  Doc. No. 59, at ¶ 23; Doc. No. 80, at ¶ 25.

The Plaintiffs have alleged sufficient facts for the first, second, fourth, and fifth elements, but they failed to do so for the third element.  For the third element, the Plaintiffs alleged that the Entergy Defendants *negligently* created or maintained the flooding condition that interfered with the use and enjoyment of their properties—the Plaintiffs have not alleged the nuisance was caused by intentional or abnormally dangerous conduct.  When basing a private nuisance claim on underlying negligent conduct, the plaintiff must prove the elements of negligence to prove the private nuisance claim relying on the negligent conduct.  *See Crosstex*, 505 S.W.3d at 607 ("A defendant can be liable for 'negligently' causing a 'nuisance,'" but such a claim "is governed by ordinary negligence principles."); *Soap Corp. of Am. v. Balis*, 223 S.W.2d 957, 960 (Tex. Civ. App.—Fort Worth 1949, writ ref'd n.r.e) ("It is not essential to allege and prove negligence in all cases of nuisance," but it must be alleged and proved when "no right of recovery can be shown independently of the existence of negligence, as appellant here contends.").  As discussed above, the Plaintiffs' negligence claim fails for three reasons: (1) the Plaintiffs have alleged that floodwaters caused their injuries, but the Entergy Defendants are not liable for damages caused by

floodwaters;  (2) the Plaintiffs have not alleged sufficient facts for the cause-in-fact component of the proximate cause element; and (3) the Plaintiffs have not alleged sufficient facts for the foreseeability component of the proximate cause element.  Because the Plaintiffs' negligence claim fails to state a claim upon which relief can be granted, the Plaintiffs' private nuisance claim based on the same negligent conduct also fails to state a claim.

Similarly, under Louisiana state law, in order for a plaintiff to establish liability on the part of the defendant, the plaintiff must prove that defendant failed to exercise reasonable care.  *See* LA. CIV. CODE ANN. art. 667 (1996)[4]; *see e.g.*, *Taylor v. Haddox*, 42-557, p. 4 (La. App. 2 Cir. 10/31/07); 968 So. 2d 1200, 1203.  The basis for Plaintiffs' private nuisance claim is that the Entergy Defendants "created and committed a private nuisance when they invaded Plaintiffs' interests in their land by negligent conduct."  Doc. No. 59, at ¶ 23; Doc. No. 80, at ¶ 25.  Because the Plaintiffs specify that their claim is based upon the Entergy Defendant's alleged negligent conduct—and Plaintiffs' negligence claim fails to state a claim—the nuisance claim must also be dismissed for the same reasons.

**F.  Claims Are Not Necessarily Preempted Under the Federal Power Act**

The Entergy Defendants generally argue that the Plaintiffs' claims are preempted under the FPA, and their argument can be summarized as follows: (1) *Simmons*, 732 F.3d at 474, held that the "FPA preempts property damage claims based in state tort law where the alleged damage is the result of 'negligently' operating in compliance with a FERC-issued license";  (2) *Simmons* only allows property damage claims that are premised on a failure to conform to FERC guidelines;

---

[4] "Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." LA. CIV. CODE ANN. art. 667.

(3) the operative complaint attempts to allege the Entergy Defendants failed to conform to FERC's guidelines;  (4) the Plaintiffs failed to adequately allege such a violation of FERC guidelines;  and (5) the FERC report attached to the pending motion already determined that the FERC license was not violated during the flood event, and the court should take judicial notice of this finding.  *See generally* Doc. No. 62, at 17–20.  Aside from the fifth contention, the Entergy Defendants are mostly correct.

The Entergy Defendants are correct that (1) *Simmons* held state law property damage claims (especially negligence) are preempted by the FPA when the underlying conduct alleged was in compliance with FERC guidelines, and (2) *Simmons* appears to allow state law property damage claims to proceed only when they are based on a failure to conform to FERC guidelines. The Entergy Defendants are also correct that (3) the operative complaint attempts to allege that the Entergy Defendants "failed to comply with the requirements" of the FERC license.  Doc. No. 59, at ¶ 21; Doc. No. 80, at ¶ 22.  As explained above, the Plaintiffs failed to allege sufficient facts for facially plausible claims of negligence, trespass, and private nuisance.   Thus, the Entergy Defendants are largely correct in their conclusion that (4) the Plaintiffs "have failed to adequately allege any violation of the FERC license by [the Entergy Defendants]" (Doc. No. 62, at 18), though the Entergy Defendants are wrong that *preemption* is the underlying reason the Plaintiffs' claims are inadequate.  The court declines to hold that the claims are preempted because the claims are insufficient in other ways.  The *aim* of the operative complaint was to allege claims based on failure to conform to FERC guidelines—reaching that aim would have avoided preemption, though the Plaintiffs failed to do so.

The Entergy Defendants urge this court to (5) take judicial notice that the FERC report attached to their motion already determined that the FERC license was not violated during the

flood event, undermining the Plaintiffs' claims.  As explained previously, the court takes judicial notice of the existence of the FERC report, but this does not mean the documents contain any truth for the purposes of determining the pending motion.  Fortunately, the court does not need to rely on the FERC report to dismiss the Plaintiffs' claims against the Entergy Defendants, so the issue is moot.

To be clear, the Entergy Defendants' argument centered on preemption is not availing in itself—the Plaintiffs attempted to base their causes of action in the Fifth Amended Complaint (Doc. No. 59) and the Response for More Definite Statement (Doc. No. 80) based on the Entergy Defendants' *failure to conform to the FERC license*.  If the Plaintiffs had included sufficient factual allegations, then their claims would have survived the Entergy Defendants' preemption argument.  However, the Plaintiffs did not support each element of their various causes of action with sufficient facts for the claims to be plausible.  Thus, the claims should still be dismissed despite the Entergy Defendants' failure to prevail on a preemption argument.

### G.  Plaintiffs Will Not be Given Leave to Amend

Under FED. R. CIV. P. 15(a), leave to amend a complaint should be "freely given when justice so requires.'"  *See Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 128 (5th Cir. 2015) ("Because of the liberal pleading presumption underlying Rule 15(a), we have acknowledged that the term 'discretion' in this context may be misleading, because [Rule] 15(a) evinces a bias in favor of granting leave to amend.") (citation and internal quotation marks omitted).  "[U]nless there is a substantial reason, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial.  In other words, district courts must entertain a presumption in favor of granting parties leave to amend." *Id.* (citations and internal quotation marks omitted).

In the instant case, the Plaintiffs should not be granted leave to amend their complaint. The operative complaint is technically the *Sixth* Amended Complaint, meaning the Plaintiffs have had numerous opportunities to cure the defects in their pleadings. The Plaintiffs originally filed their claims in state court over two years ago (*see* Case No. 1:16-CV-171-RC, Doc. No. 4, at 1), and the Defendants would be unduly prejudiced by allowing the Plaintiffs to amend their complaint again. Accordingly, the court should dismiss the Plaintiffs' claims against the Entergy Defendants with prejudice.

## VI. Recommendation

The undersigned recommends that the Entergy Defendants' "Motion to Dismiss Plaintiffs' Fifth Amended Petition Pursuant to Rule 12(b)(6)" (Doc. No. 62) should be **GRANTED**, and the Plaintiffs' claims against the Entergy Defendants should be **DISMISSED** with prejudice.

## VII. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) (Supp. IV 2011), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report; and (4) be no more than eight pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. Tex. Civ. R. CV-72(c). A party who objects to this Report is entitled to a de novo determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy

of this Report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 1st day of March, 2019.

_____
Zack Hawthorn
United States Magistrate Judge